UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOMODE ELIE GETTY,

               Plaintiff,

-against-

NATIONAL OIL CORPORATION LIBYA;
HONEYWELL,

               Defendants.

23-CV-11190 (LTS)

PARTIAL DISMISSAL AND TRANSFER ORDER

LAURA TAYLOR SWAIN, Chief United States District Judge:

    Plaintiff, who is proceeding *pro se* and *in forma pauperis*, filed this complaint alleging that Defendants violated his rights. By order dated July 8, 2024, the Court directed Plaintiff to amend his original complaint to address deficiencies in that pleading.

    Plaintiff filed an amended complaint on August 2, 2024, and the Court has reviewed it. For the reasons set forth below, Plaintiff's claims against Defendant Honeywell are dismissed without prejudice, and the Clerk of Court is directed to transfer Plaintiff's remaining claims, against NOC Libya, to the United States District Court for the Southern District of Texas.

## STANDARD OF REVIEW

    The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

    While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

## PROCEDURAL HISTORY

In Plaintiff Jomode Getty's original complaint, he made the following allegations. He is a Libyan national residing in the United States, and a member of the Toubo ethnic group, which has faced persecution in Libya.[1] (ECF 1 at 11.) On November 15, 2011, Plaintiff founded Murzuq Oil in Libya, and he serves as its Chief Executive Officer (CEO). (*Id.* at 12.)

In 2013, Murzuq Oil made a bid to takeover Petroplus, an oil refinery in France, which included a proposal to import crude oil from Libya. (*Id.* at 27.) As CEO of Murzuq Oil, Plaintiff met with Libya's Minister of Petroleum for hours to discuss the proposed strategy, and he noted the importance of establishing a presence in Houston, Texas, which has "dynamic small companies in the oil sector"; Plaintiff provided his 40-page business proposal. (*Id.* at 12.) In March 2013, Plaintiff met with Mosin Deriga, head of the Libyan Investment Authority (LIA) to get support for Murzuq Oil's proposed takeover of Petroplus. The National Oil Company (NOC) Libya eventually refused to confirm that Murzuq Oil would receive a crude oil allocation, which Plaintiff attributes to "pervasive anti-France sentiment" and discrimination against him as a non-Arab. (*Id.* at 13.) Although Murzuq Oil had been one of two candidates on the short list to take

---

[1] Plaintiff has consented to electronic service of documents and provided an email address of record. (ECF 3.) He does not, however, indicate any address where he resides.

over Petroplus, which had filed for bankruptcy, the Commercial Court in Rouen, France, did not select Murzuq Oil. (*Id.* at 12, 27-28.)

In 2017, Plaintiff came to the United States on a business visa. (*Id.* at 13.) In October 2017, Murzuq Oil "opened a branch in USA Charlotte NC," and then "transferred to Houston, Texas." (*Id.* at 41.) The "American branch of Murzuq Oil [is] called Murzuq Oil and Gas Corporation." (*Id.* at 13.) Plaintiff, on behalf of either Murzuq Oil or Murzuq Oil and Gas Corporation, engaged in negotiations for projects in Italy and Africa. (*Id.*)

In 2020 or 2021, NOC Libya established a company in London called Murzuq Oil Services Limited, run by the head of marketing of NOC Libya. (*Id.* at 38.) Plaintiff's friends called to congratulate him, thinking that he had sold his business to NOC Libya. NOC Libya's CEO went to the Energy Week conference in Houston, where he announced that NOC Libya created Murzuq Oil Services Limited and met with important companies in the field. (*Id.* at 22.) Plaintiff alleges that NOC Libya "steals and uses all [of] my ideas." (*Id.*) Plaintiff asserts claims for "theft of business plan and industrial strategy." (*Id.* at 23.) He asserts that he is "unable to engage with big oil companies in the US . . . because NOC Libya is using the name of [his] company." (*Id.* at 23.) Plaintiff wrote to NOC Libya requesting that they "change th[e] name" of the London company. (*Id.* at 24.)

In May 2022, either Murzuq Oil (founded by Plaintiff in Libya), or Murzuq Oil and Gas Corporation (founded by Plaintiff in the United States), submitted a proposal to NOC Libya relating to a refinery in Southern Libya, where Plaintiff is from. The project was awarded to Honeywell, despite Murzuq Oil's bid having been lower than Honeywell's bid. Plaintiff contended that Honeywell violated antitrust law by abusing its dominant position in the market and engaged in fraud by paying "kickbacks" to NOC Libya management. (*Id.* at 25.)

By order dated July 8, 2024, the Court held that NOC Libya was entitled to immunity, under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1330, 1602 *et seq*., unless an exception applied. The Court concluded that Plaintiff had not alleged that NOC Libya's actions were within the commercial activity exception because its actions (1) took place outside the United States and (2) did not have a direct effect in the United States. (ECF 5 at 4.) The Court also held that Plaintiff had not stated a claim against Defendant Honeywell and granted Plaintiff leave to replead his claims against both Defendants.

On August 2, 2024, Plaintiff filed a letter response. In his letter, Plaintiff states that (1) NOC Libya is not immune under the FSIA because it is "a commercial company like Exxon Mobil CP or Shell . . . .," and because NOC Libya had engaged in activities in the United States (ECF 6 at 2, 4); (2) his attorney had filed suit in 2021, against NOC Libya in Sebha, Libya, after it refused to desist from using the name Murzuq Oil, but court hearings have been repeatedly postponed; (3) he has "9 project patents in the USA," and he has obtained (or has a patent pending) with the United States Patent and Trademark Office. He alleges that NOC Libya used the Murzuq Oil name to "sabotage" him as a non-Arab and that, if it had not done so, the Murzuq Oil company that he had founded "would be worth at least 9 billion dollars." (*Id.* at 6.) He asks "NOC Libya to pay [his] company Marzuq Oil $10 Billion in Damages and Interest." (*Id.*) Plaintiff further stated that he would file a separate suit against Honeywell for abusing its dominant position in the market, and that his response relates only to NOC Libya. (*Id.* at 7.)

By order dated August 16, 2024, the Court granted Plaintiff a further opportunity to amend his complaint and stated that, if he failed to do so, his letter response would be deemed the amended complaint. Plaintiff did not file any further submission.

## DISCUSSION

The Court deems Plaintiff's letter response (ECF 6) as his amended complaint, and directs the Clerk of Court below to refile it as such.

### A.   Claims against Honeywell

Plaintiff initially brought a claim against Honeywell based on antitrust law (also known as competition law). Plaintiff alleged that Murzuq Oil bid against Honeywell for a refinery project in Libya, but Honeywell abused its dominant position in the oil market and paid bribes; as a result, Honeywell was awarded the project.[2] By order dated July 8, 2024, the Court dismissed Plaintiff's claims against Honeywell with leave to replead. Plaintiff indicates that he wishes to withdraw his claims against Defendant Honeywell and pursue them separately.

Under Rule 41(a) of the Federal Rules of Civil Procedure, a plaintiff may dismiss an action without a court order by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment. The Court construes Plaintiff's application (ECF 6) as a notice of dismissal of his claims against Honeywell; in consequence of Plaintiff's voluntary withdrawal of his claims against Honeywell prior to service of the complaint, the Court dismisses Plaintiff's claims against Defendant Honeywell without prejudice. Fed. R. Civ. P. 41(a).

---

[2] Honeywell is alleged to have been competing with Murzuq Oil in its bid for refinery projects, not with Jomodo Getty. Therefore, among other potential problems, it may be that either Getty is not a proper plaintiff to assert such a claim, or that Murzuq Oil, which cannot appear *pro se*, is a necessary party to such an action. Fed. R. Civ. P. 19(a). Likewise, Plaintiff Getty's claims that NOC Libya founded a company with a name confusingly similar to Murzuq Oil, thereby injuring Murzuq Oil's business reputation and causing it to lose revenue, also might have to be brought on behalf of Murzuq Oil, which can only appear through counsel, rather than by Getty as an individual.

**B.     FSIA immunity**

Plaintiff contends in his amended complaint that (1) NOC Libya is a corporation that does not qualify as a foreign sovereign; and (2) even if NOC Libya were a foreign sovereign, it qualifies for the commercial activity exception to the FSIA. Although his pleading is not entirely clear, Plaintiff can be understood as alleging that NOC Libya's actions harmed Murzuq Oil and Gas Company, which he had established in Texas. Plaintiff further alleges that NOC Libya engaged in activities in Houston, such as during Houston Energy Week, that gave rise to his claims.

NOC Libya has asserted in other suits that it is wholly owned by the Libyan government and therefore entitled to sovereign immunity. *Abdulrazeq v. Nat'l Oil Corp.*, No. H-19-3328, 2019 WL 10892092, at *2, n.6 (S.D. Tex. Dec. 9, 2019) (dismissing for lack of diversity jurisdiction and declining to reach NOC's argument that "it is entitled to sovereign immunity"). In light of the Court's conclusion below regarding venue, the Court does not address *sua sponte* Plaintiff's arguments about the commercial activity exception to NOC's immunity under the FSIA.

**C.     Venue**

Plaintiff does not provide his home address and nothing in the complaint suggests that he lives in New York. He also does not plead any facts about anything that took place in New York. Plaintiff has not identified the statutory basis for his claims (or any claims that he is attempting to bring on behalf of Murzuq Oil). The amended complaint might be construed as asserting claims arising under the Lanham Act, the Defend Trade Secrets Act, the Copyright Act, the U.S.

Patent Act, or some other federal statute.[3] The general venue statute applies to some of these claims. Under the general venue statute, a civil action may be brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391.

For venue purposes, a "natural person" resides in the district where the person is domiciled, and an "entity with the capacity to sue and be sued" resides in any judicial district where it is subject to personal jurisdiction with respect to the civil action in question. *See* 28 U.S.C. § 1391(c)(1), (2).

NOC Libya has its headquarters in Tripoli, Libya, and nothing in the complaint suggests that it is subject to personal jurisdiction in this district. Venue thus does not appear proper in this district under Section 1391(b)(1) based on the residence in the United States, if any, of NOC Libya. Plaintiff bases some of his claims on NOC Libya's conduct in Houston, Texas. (ECF 1 at 22.) He also lists an address for his U.S. corporation, Marzuq Oil and Gas Corporation, in Houston, Texas.[4] Houston thus appears to be a place where some actions giving rise to Plaintiff's claims allegedly occurred; Plaintiff does not allege that Defendant took any actions in New York

---

[3] Plaintiff must rely on federal law as the basis for subject matter jurisdiction, 28 U.S.C. § 1331, because the Court lacks diversity jurisdiction of a suit between foreign nationals. Jomodo Getty and NOC are both citizens of Libya, and the Court thus lacks diversity jurisdiction of this matter, 28 U.S.C. § 1332. *Abdulrazeq*, 2019 WL 10892092, at *1 (noting that district court lacked diversity jurisdiction of suit between NOC, which was a citizen of Libya, and plaintiff, who was a citizen of Jordan, because the suit was between foreign nationals).

[4] ECF 1 at 14 (listing address as 11111 Katy Freeway, Suite 910, Houston, TX 77079).

or this district. Venue under Section 1391(b)(2), based on where events giving rise to the claims took place, therefore is not proper in this district, but may be proper in Texas.[5]

Even if venue is proper in the district where a case is filed, a court may transfer the case "[f]or the convenience of parties and witnesses, in the interest of justice" to any other district where it might have been brought. 28 U.S.C. § 1404(a). In determining whether transfer is appropriate, courts consider the following factors: (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of the unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to the plaintiff's choice of forum; (9) trial efficiency; and (10) the interest of justice, based on the totality of circumstances. *Keitt v. N.Y. City*, 882 F. Supp. 2d 412, 459-60 (S.D.N.Y. 2011); *see also N.Y. Marine & Gen. Ins. Co. v. LaFarge No. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (setting forth similar factors). A plaintiff's choice of forum is accorded less deference where the plaintiff does not reside in the chosen forum and the operative events did not occur there. *See Iragorri v. United Tech. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001).

Transfer under Section 1404(a) appears to be appropriate in this case. The underlying events in the United States that are alleged to have been the basis for Plaintiff's claims occurred

---

[5] Some of the claims that Plaintiff may intend to bring are subject to special venue provisions. For Copyright Act claims and claims under the Lanham Act for trademark infringement, venue is proper in either the judicial district where the defendant resides, or the judicial district where the defendant has committed acts of infringement and has a regular and established place of business. 28 U.S.C. § 1400(b); *see Sunlight Sols., LLC v. Birnbaum*, No. 06-CV-0683 (RJA), 2008 WL 724215, at *6 (W.D.N.Y. Mar. 17, 2008) (Section 1400(b) governs venue for Copyright Act claims). Plaintiff suggests that events took place in Houston, and NOC may have a place of business in Texas. *Abdulrazeq*, 2019 WL 10892092, at *1 (Defendant NOC Libya "is registered to transact business in Texas").

in Houston, Texas, which is in the Southern District of Texas, 28 U.S.C. § 124(b)(2). Plaintiff's choice of this district is entitled to less deference because he does not appear to reside in the chosen forum. The Southern District of Texas appears to be a more appropriate forum for this action. Accordingly, the Court transfers this action, now consisting only of claims against NOC Libya, to the United States District Court for the Southern District of Texas. 28 U.S.C. § 1404(a); *see D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) ("District courts have broad discretion in making determinations of convenience under Section 1404(a) . . ."). [6]

## CONCLUSION

Plaintiff's claims against Defendant Honeywell are voluntarily dismissed under Rule 41(a) of the Federal Rules of Civil Procedure, and the Clerk of Court is directed to terminate that defendant on the docket. The Clerk of Court is further directed (1) to refile Plaintiff's letter (ECF 6) as an Amended Complaint; and (2) to transfer this action, under 28 U.S.C. § 1404, to the United States District Court for the Southern District of Texas, Houston Division.

---

[6] Plaintiff asserts that Libya is "politically chaotic" and has "two distinct governments" (ECF 6 at 5), and it is not clear how Plaintiff could serve NOC Libya with a summons and complaint. The United States Marshals Service cannot do so because Libya is not a party to the Hague Convention. To serve the complaint on NOC via letter rogatory, Fed. R. Civ. P. 4(f)(2)(B), Plaintiff would be required to pay the $2,275 fee to the U.S. Department of State even though he proceeds *in forma pauperis* in this action. *Perez-De Leon v. Central Bank of Nigeria*, No. 20-CV-10428, 2020 WL 13577528, at *2 (E.D. Mich. July 9, 2020) (denying request for letter rogatory because indigent plaintiff would be required to pay $2,275 fee and other costs and service was unlikely to be successful). Moreover, the court in Libya would have discretion not to honor such a request. *See Bersoum v. Aboteat*, 568 F. Supp. 3d 443, 458-59 (S.D.N.Y. 2021) (declining to issue letters rogatory to a court in Libya, which "might or might not honor them").

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:   January 13, 2025
        New York, New York

                                          /s/ Laura Taylor Swain
                                          LAURA TAYLOR SWAIN
                                          Chief United States District Judge